IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JACOB COLBY SPRADLIN,

      Plaintiff,

v.                                     Case No. 3:19-cv-00363

OFFICER HENSON, correctional
officer at the Western Regional
Jail and Correctional Facility,

      Defendant.

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

On May 8, 2019, Plaintiff, Jacob Spradlin ("Spradlin"), proceeding *pro se* and incarcerated at the Western Regional Jail and Correctional Facility in Barboursville, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983 against Defendant, Correctional Officer Henson ("Henson"), alleging that Henson used excessive force when directing Spradlin to his cell for lockdown. (ECF No. 2 at 6-8, ECF No. 5). Pending before the Court is Henson's Motion for Summary Judgment, (ECF No. 9), to which Spradlin has filed a response in opposition. (ECF No. 13). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed the record, the undersigned **FINDS** that the complaint is frivolous and fails to state a plausible claim against Henson. Accordingly, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Henson's

Motion for Summary Judgment, (ECF No. 9); **DISMISS** the complaint, with prejudice**;** and **REMOVE** this matter from the docket of the Court.

## I.    Relevant Facts and Procedural History

On April 30, 2019, Spradlin completed a § 1983 complaint form. (ECF No. 2). As part of the form, Spradlin was asked if he had submitted a grievance to the Jail before filing his lawsuit. (*Id.* at 3). Spradlin responded that he "wrote a statement and filed" it with the Jail, but the grievance was, at that time, undecided. (*Id.*)

Spradlin alleges that, on April 27, 2019, an inmate by the name of Cruickshank[1] got into a verbal disagreement with Henson over juice. (*Id.* at 5). Henson insulted Cruickshank and then left the pod. Henson returned later and began to verbally harass Cruickshank, who was eating dinner. When Cruickshank asked to be left alone, Henson ordered Cruickshank to his cell for lockdown. (*Id.* at 6). Henson began pushing Cruickshank up the stairs to his cell, which caused Cruickshank to fall, dropping his food tray and scrapping his knee. (*Id.*). Cruickshank pleaded with Henson not to make him go into the cell, but Henson continued to push Cruickshank in that direction. After Cruickshank was in his cell, Spradlin asked Henson for his name, indicating that a lawyer would be talking to Henson about his behavior. (*Id.* at 7). Henson then pushed Spradlin into his cell and put him on lockdown. Spradlin accuses Henson of using excessive force and requests $250,000 in damages for "mental anguish." (*Id.* at 9).

On May 10, 2019, the undersigned entered an Order, pointing out to Spradlin that he had only waited three days after submitting his grievance before filing his complaint. (ECF No. 4). The undersigned explained that the Prison Litigation Reform Act required

---

[1] Incorrectly spelled "Crookshank" by Spradlin.

Spradlin to exhaust his administrative remedies prior to filing a § 1983 case. In addition, the undersigned advised Spradlin that his complaint likely did not state a *prima facie* case against Henson, because Spradlin failed to allege any physical injury from the alleged excessive force. (ECF No. 4). Accordingly, Spradlin was given the opportunity to file an amended complaint to cure these deficiencies.

Spradlin filed an amended complaint on May 23, 2019. (ECF No. 5). In the amended pleading, Spradlin alleges that when Henson pushed Spradlin into his cell, he suffered an injury to his knee. (*Id.*). Spradlin indicates that photographs were taken of his injury by Timothy G. Blevins. Spradlin again asserts mental anguish as an additional injury.

On June 6, 2019, Henson was served with the amended complaint. (ECF No. 8). On July 3, 2019, he filed the instant Motion for Summary Judgment. (ECF No. 9). In the Motion and accompanying memorandum, Henson asserts four grounds for dismissal. First, he argues that Spradlin has not exhausted his administrative remedies and, as such, his complaint should be dismissed. (ECF No. 10 at 7). Second, Henson contends that Spradlin has no evidence to support an excessive force allegation. (*Id.* at 11). In support of this ground, Henson submits surveillance videotape of the incident between Spradlin and Henson, which he claims conclusively shows that no excessive force was used. (ECF No. 12). Moreover, Henson disputes Spradlin's claim of a physical injury and attaches a photograph of Spradlin's knee taken shortly after the incident, which purportedly shows no injury. (ECF No. 9-2). Henson states that Spradlin's lack of a physical injury precludes liability under § 1983. (ECF No. 10 at 12-14). Third, Henson argues that he is immune from liability in his official capacity, because, while acting in that capacity, he acts as an arm of the State of West Virginia entitled to sovereign immunity. (*Id.* at 14-15). Finally,

Henson posits that, even if he is not entitled to sovereign immunity, he is nonetheless entitled to qualified immunity from litigation in his personal capacity. (*Id*. at 15-18).

On July 5, 2019, the undersigned entered an Order pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), notifying Spradlin of his right and duty to respond to Henson's summary judgment motion. Spradlin filed a response in opposition to the Motion for Summary Judgment, contending, without support, that he has exhausted administrative remedies and arguing that the evidence supports his case. (ECF No. 13). Spradlin does not challenge the authenticity or accuracy of the videotape and photograph; rather, he contends that the videotape shows Henson shoving him, and the photograph shows a red and swollen knee. Spradlin adds that Henson violated policy by using force before giving three direct orders to Spradlin to go into his cell. (*Id*.).

Henson did not reply to Spradlin's opposition motion, and the time for doing so has expired. Therefore, this matter is fully briefed and ready for resolution.

## II.   <u>Standard of Review</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An assertion of a material fact must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of showing "an absence of evidence that demonstrates the existence of a genuine issue of fact for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party meets this burden, then the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322, n.3.  The nonmoving party must do more than rely upon the allegations or the denial of allegations contained in his pleadings to defeat a motion for summary judgment; instead, he must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Nonetheless, "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288-89 (1968). When resolving a motion for summary judgment, the court shall "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, (1991).

On the other hand, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. Indeed, a nonmoving plaintiff cannot defeat a properly supported summary judgment motion without offering "significant probative evidence tending to support the complaint." *Id.* at 256. "[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion." *Id.* at 256-57 (citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson,* 477 U.S. at 242).

## III.   <u>Relevant Law</u>

### A.  *Eighth Amendment to the United States Constitution*

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment" to the United States Constitution.[2] *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (internal citations omitted). The use of excessive force against an inmate by a correctional officer plainly violates the Eighth Amendment's cruel and unusual punishment clause, *Wilkins v. Gaddy,* 559 U.S. 34 (2010), and is cognizable under 42 U.S.C. § 1983. To establish a constitutional claim of excessive force, Spradlin must show that Henson "inflicted unnecessary and wanton pain and suffering." *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir.1998) (quoting *Whitley v. Albers,* 475 U.S. 312, 320 (1986)). This claim contains both an objective and a subjective component.

To satisfy the objective component, Spradlin must demonstrate that the force applied by Henson was "sufficiently serious." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). "This is not a high bar, requiring only something more than '*de minimus'* force" *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) (citing *Hudson v. McMillian,* 503 U.S. 1, 10 (1992)). While "mere threats or verbal abuse, without more, do not state a cognizable claim under § 1983," *Wilson v. McKeller,* 254 F.App'x. 960, 961 (4th Cir. 2007)

---

[2] The record is not clear as to whether Spradlin was a convicted prisoner or a pretrial detainee on April 27, 2019. If he was a pretrial detainee, Spradlin's rights arise under the Fourteenth Amendment to the United States Constitution. However, the standards that apply to his claims are the same standards used to evaluate an Eighth Amendment claim. *Brown v. Harris,* 240 F.3d 383, 388 (4th Cir 2001). As such, cases applying the Eighth Amendment standards are applicable. *Parrish ex rel. Lee v. Cleveland,* 372 F.3d 294, 302 (4th Cir. 2004).

(citing *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)), "'nontrivial' force is sufficient to state a claim under the Eighth Amendment. *Brooks,* 924 F.3d at 112 (quoting *Wilkins,* 559 U.S. at 39).

With respect to the subjective element of an excessive force claim, Spradlin must show that Henson "acted with a sufficiently culpable state of mind." *Williams,* 77 F.3d at 761. This is a "demanding standard," because the "state of mind required ... is wantonness in the infliction of pain." *Brooks,* 924 F.3d at 112. When a prison official "maliciously and sadistically use[s] force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evident." *Wilkins,* 559 U.S. at 37 (explaining that the "core judicial inquiry" is whether the force "was applied ... maliciously and sadistically to cause harm.") (quoting *Hudson,* 503 U.S. at 7). Prison officials act with "a permissible motive—not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Brooks,* 924 F.3d at 113 (citation and internal markings omitted). "But corrections officers cross the line into impermissible motive—using force maliciously and for the very purpose of causing harm—when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Id.* (internal citations and markings omitted).

When considering an excessive force claim, the court must ask if "the force applied was in a good faith effort to maintain or restore discipline" or was simply for the purpose of causing injury. *Taylor,* 155 F.3d at 483 To make this determination, the court should examine the following factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used: (3) the extent of the injury inflicted; and (4) the extent of the threat to the safety of staff and inmates as reasonably

perceived by the responsible officials on the basis of the facts known to them." *Chisolm v. Assoc. Warden Thompson*, No. 4:15-CV-01806-RBH, 2016 WL 4394276, at *7 (D.S.C. Aug. 18, 2016) (quoting *Whitley*, 475 U.S. at 321). "While excessive force does require malicious intent, it does not require that the prisoner victim suffer a 'significant injury.' ... [A] prisoner who suffers a minor, but malicious, injury may be able to prevail on an excessive force claim." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017).

Nevertheless, the lack of serious injury is not irrelevant to the Eighth Amendment inquiry. *Hudson*, 503 U.S. at 7 ("The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it."). The extent of the injury provides some indication as to the amount of force applied. *Wilkins*, 559 U.S. at 37. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "An inmate who complains of a push or a shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Hudson*, 503 U.S. at 9; *see also Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016).

### B.  The Prison Litigation Reform Act

### 1. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need

not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter v. Nussle,* 534 U.S. 516, 524 (2002) (citations and internal quotation marks omitted)).

In *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016), the Supreme Court of the United States ("Supreme Court") reiterated the mandatory exhaustion requirement found in § 1997e, but pointed out that the statute contains one explicit exception; the inmate need not exhaust "unavailable" remedies. *Id.* The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Administrative exhaustion is "not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner." *Hart v. Roderick,* No. CV GLR-15-2054, 2016 WL 3940219, at *3 (D. Md. July 21, 2016) (citations omitted). As such, exhaustion need not be alleged by the plaintiff in his complaint, but is instead "an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.,* 407 F.3d 674, 681 (4th

Cir. 2005). Although exhaustion is an affirmative defense, this "does not foreclose in all cases the possibility of a *sua sponte* dismissal on exhaustion grounds." *Id*. In the rare instance when the face of a complaint clearly demonstrates a prisoner's failure to exhaust administrative remedies, *sua sponte* dismissal on that ground is appropriate. *Anderson*, 407 F.3d at 682 (citing *Nasim v. Warden,* 64 F.3d 951 (4th Cir. 1995)). When exhaustion is not clear on the face of the complaint, a district court may still *sua sponte* raise that affirmative defense, but may not dismiss the complaint on that ground without first giving the plaintiff an opportunity to respond. *Id*. at 682-83.

### 2. Injury Required

The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" referenced by the Act need not be significant, but it must be more than *de minimis*. *See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191 (5th Cir. 1997); *Zehner v. Trigg,* 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2001), *quoting Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (internal quotation marks omitted).

## IV.    Discussion

As previously stated, Henson moves for dismissal on four grounds, two of which are based on immunity. Because Henson's other two grounds clearly entitle him to summary judgment, the Court need not consider the question of immunity.

### A.  Failure to Exhaust Administrative Remedies

For West Virginia state inmates, exhaustion of administrative remedies for claims involving the general conditions of confinement—such as claims of excessive force—requires a final decision from "the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2.[3] The following grievance procedure governed inmates housed at West Virginia regional jails:

> [I]inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be

---

[3] In July 2018, the newly created West Virginia Division of Corrections and Rehabilitation ("DCR") assumed control of all of the jails and correctional facilities in the State of West Virginia, which previously were managed by either the West Virginia Division of Corrections, or the West Virginia Regional Jail and Correctional Facility Authority. The Division of Corrections and the Jail Authority each had its own grievance procedure. The DCR has not provided clear guidance to the public regarding which of the two grievance procedures currently governs DCR inmates, or if the two distinct procedures remain in effect and apply based on where the inmate is housed. However, for the purpose of resolving the exhaustion issue in this case, it matters not, as Spradlin did not fulfill the requirements of either grievance procedure.

submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

*See Green v. Trinity Food Serv.*, No. 3:19-CV-128, 2019 WL 4281921, at *2 (N.D.W. Va. Aug. 12, 2019), *report and recommendation adopted,* No. 3:19-CV-128, 2019 WL 4280050 (N.D.W. Va. Sept. 10, 2019). Inmates housed in a state correctional facility followed a similar three-level grievance procedure, set forth in Policy Directive 335.00. *See* W. Va. Code St. R. § 90-1-1, § 90-1-2. At the first step of that process, the inmate was required to submit a completed written grievance form to his or her Unit Manager within fifteen days of the occurrence that caused the inmate to file the grievance. If the grievance was rejected, denied, or the inmate did not receive a response within five days, the inmate could appeal to the Warden/Administrator within five days of delivery of the response or the date that the response was due. The inmate could then appeal the issue to the Commissioner of the Division of Corrections within five days after the inmate received the Warden/Administrator's response or the date for the response has passed. Policy Directive 335.00 is clear that "[i]f a grievance has not been properly submitted through any level by an inmate, it shall be rejected." Further, a "rejected grievance *does not exhaust the grievance process or that step of the process.*" Policy Directive 335.00 (emphasis added).

The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court … and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

In this case, Spradlin acknowledged in his complaint that the Jail had a grievance procedure, and that he had submitted a "statement" concerning the alleged use of excessive force by Henson. Spradlin incorporated a copy of the statement in his complaint. (ECF No. 2 at 5-8). Spradlin also admitted, however, that the grievance had not yet been decided at the time he prepared his § 1983 complaint. (*Id.* at 3). In a Memorandum Order discussing certain deficiencies in Spradlin's complaint, the undersigned *sua sponte* raised the issue of exhaustion and noted that Spradlin submitted his grievance on April 27, 2019, a mere three days before signing off on his § 1983 complaint. (ECF No. 4 at 2-5). The exhaustion requirement was explained to Spradlin and he was given thirty days in which to demonstrate that he had exhausted his remedies. (*Id.* at 2-5, 8). Spradlin filed an amended complaint, but did not address the exhaustion issue. (ECF No. 5). Spradlin did not provide any evidence to establish exhaustion, nor did he argue that an exception to exhaustion existed in his case.

In the Motion for Summary Judgment, Henson raised the affirmative defense of exhaustion. (ECF No. 9). Although he did not clarify which procedure Spradlin was required to follow, Henson emphasized that Spradlin conceded on the face of his complaint that he had not exhausted his administrative remedies. (ECF No. 10 at 9). As stated, Spradlin indeed confirmed in the complaint that his submitted grievance was unresolved, and the time frame allowed for an initial response to the grievance had not expired.

In Spradlin's response in opposition to the Motion for Summary Judgment, he asserted that he had exhausted his remedies. (ECF No. 13 at 1). However, Spradlin provided no evidence to substantiate his allegation, nor did he make the representation under oath. According to Spradlin, at some point after completing the § 1983 complaint, he received an unfavorable response from the Jail to his grievance. (*Id.*). Even assuming this is correct, that response would not have exhausted the grievance process. Rather, Spradlin was required, as the final step in the procedure, to appeal the decision to the Commissioner of the DCR, or the Executive Director of the Jail Authority. Considering the date of his grievance and the date of his complaint—which was written three days later—Spradlin simply could not have exhausted all steps of the grievance procedure before filing suit.

Therefore, the undersigned **FINDS** that Spradlin did not properly exhaust administrative remedies before filing the instant action as required by the PLRA.

### B.  *Failure to State a Plausible Claim*

In addition to his failure to exhaust administrative remedies, Spradlin fails to provide evidence sufficient to rebut Henson's Motion for Summary Judgment. Spradlin does not contest the accuracy and authenticity of the surveillance videotape and

14

photograph filed by Henson. However, in contrast to Henson's position, Spradlin claims that this evidence corroborates his allegation of excessive force with a resulting physical injury. Having viewed the videotape and examined the photograph, the undersigned **FINDS** that this evidence unequivocally contradicts Spradlin's version of the facts. When "the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve,* 535 F.3d 225, 230 (4th Cir. 2008). The events, as captured on the videotape, so clearly undermine Spradlin's complaint of excessive force, that there are no genuine issues of material fact in dispute, and no rational trier of fact could find in Spradlin's favor.

On the videotape, the inmates in Spradlin's pod are eating dinner when Henson comes in and begins to signal for them to go to their cells. (ECF No. 12). Henson and inmate Joseph Cruickshank exchange words, then Henson starts corralling Cruickshank toward the stairs to his cell. Henson shoves Cruickshank as he begins to ascend the stairs, causing him to stumble and drop his food tray. While this is happening, Spradlin, who had been sitting on the floor eating, picks up his tray and starts walking toward the stairs. Spradlin carries his tray up the stairs past Henson and Cruickshank, who are standing on the stairs talking. Spradlin enters his cell, which is next to Cruikshank's cell, and then comes back to the threshold and hovers there, watching Henson and Cruickshank. As Henson is speaking to Cruickshank, who is in his cell, Spradlin begins talking and gesticulating at Henson. Although there is no audio component to the videotape, Spradlin is apparently making enough noise to attract the attention of the other inmates, who look up from the first floor toward Spradlin on the second floor. Henson closes Cruickshank's cell door and begins to descend the stairs. Throughout, Spradlin appears to be speaking

to Henson. As Henson goes down the stairs, Spradlin leans over the railing on the second floor and continues speaking to Henson. Henson turns around, goes back up the stairs, walks toward Spradlin and bumps into him, directing him into his cell. At this point, Spradlin turns and walks into the cell. Henson closes the cell door.

At no time does the videotape capture Henson using his hands to shove or push Spradlin, or Spradlin stumbling or falling to the ground, or Spradlin injuring his knee. While the videotape shows Henson bumping his torso lightly into Spradlin, it does not demonstrate any action by Henson that would have resulted in a physical injury to Spradlin. The lack of injury is further substantiated by the photographs of Spradlin taken after the incident, which show no marks, swelling, bruising, or other signs of trauma. (ECF No. 9-2 at 4).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247-48 (emphasis in original). A court is not permitted to reject one party's version of the facts as a matter of law simply because the "documentary evidence, such as a video ... offers some support" for the other party's version, *Witt v. West Virginia State Police, Troop 2,* 633 F.3d 272, 276 (4th Cir. 2011). However, "[i]ncontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court" when ruling on a motion for summary judgment "if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party. *King v. Dorn,* No. CV ELH-17-3740, 2019 WL 498864, at *9 (D. Md. Feb. 8, 2019) (quoting *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007); *also Greene v. Berkley Cty. Jail,* No. CIV.A. 9:13-3157-MGL, 2014 WL

4702572, at *6 (D.S.C. Sept. 18, 2014) (holding that videotape refuted prisoner's claim that the use of force against him was unjustified).

Here, even a cursory review of the uncontroverted evidence reveals that Spradlin was not the victim of excessive force and did not suffer any physical injury in his encounter with Henson. Moreover, although the words exchanged cannot be heard, the videotape shows that Spradlin interjected himself into a disagreement between an inmate and a correctional officer, which did not involve Spradlin; that Spradlin exacerbated the situation by continuing to gesticulate and talk to Henson while he was trying to get Cruickshank into his cell; and that Spradlin would not have been placed in lockdown that day if not for his own behavior. Consequently, Spradlin fails to satisfy either element of an excessive force claim.

Therefore, as the undersigned **FINDS** that the videotape and photographic evidence conclusively demonstrate that Henson did not use excessive force and Spradlin was not injured, Spradlin fails to state a plausible Eighth Amendment claim.

## V.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Defendant's Motion for Summary Judgment, (ECF No. 9); **DISMISS** the complaint and amended complaint, with prejudice, (ECF Nos. 2, 5); and **REMOVE** this case from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers, Magistrate Judge Eifert, counsel of record, and any unrepresented party.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** September 26, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge